IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ROBBIE AUTERY and SHANE FULMER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | |
| KEVIN DAVIS in his official capacity as | ) | 2:08-CV-41-WC |
| Sheriff of Chilton County, Alabama, and | ) | |
| individually, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFFS' JOINT RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## INDEX

Narrative Summary of Undisputed Material Facts . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Plaintiffs' Narrative Summary of Material Facts . . . . . . . . . . . . . . . . . . . . . . . . . . 8

The Summary Judgment Standard Requires Denial . . . . . . . . . . . . . . . . . . . . . . . . 8

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

     Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

     The Constitutionality of the Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

     The Qualified Immunity Defense . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## NARRATIVE SUMMARY OF UNDISPUTED MATERIAL FACTS

Plaintiffs adopt the following undisputed facts submitted by Defendant[1]:

This is an action for relief under 42 U.S.C. § 1983, for alleged violations of Plaintiffs' employment rights. Plaintiff Shane Fulmer was hired to work as a Chilton County Deputy Sheriff on January 19, 1999. He was hired by former Chilton County Sheriff Billy Wayne Fulmer, who is Plaintiff Fulmer's father. Plaintiff Robbie Autery was hired as a part-time Chilton County Deputy Sheriff on October 3, 2005, and because a full-time employee June 19, 2006. He was also hired by former Chilton County Sheriff Fulmer, whom Plaintiff Autery describes as a family member.

Billy Wayne Fulmer was defeated in the Chilton County November 2006 general election, and defendant Kevin Davis was elected as the new Chilton County Sheriff. Both Plaintiffs actively campaigned for Billy Wayne Fulmer and against Sheriff Davis in the election.

Plaintiffs claim that they were terminated in violation of their First, Fifth and Fourteenth Amendment Rights under the United States Constitution. They allege that they were terminated in retaliation for exercising their rights of free speech, and that their due process rights were violated when they were not given a post-termination hearing.

---

[1] Unfortunately, Plaintiffs cannot refer to Defendant's Narrative Summary of Undisputed Facts by number because the paragraphs were not numbered in Defendant's Brief.

Plaintiff Shane Fulmer was hired to work as a Chilton County Deputy Sheriff on January 19, 1999.  (Ex. "A", Depo of Fulmer, p. 15, lines 5-8).  The former Chilton County Sheriff Billy Wayne Fulmer, is Plaintiff Fulmer's father.  (Ex. "B", Affidavit of Shane Mayfield, ¶ 4).  Plaintiff Robbie Autery was hired as a part-time Chilton County Deputy Sheriff on October 3, 2005, and became a full-time employee June 19, 2006.  (Ex. "C", Depo. of Autery, p. 18, lines 8-23).  He was also hired by former Chilton County Sheriff Billy Wayne Fulmer, whom Plaintiff Autery describes as a family member.  (Ex. "C", Depo. of Autery, p. 9, lines 6-15; p. 21, line 17 to p. 22, line 3).

Kevin Davis was elected Sheriff of Chilton County in 2006.  (Ex. "D", Depo. of Davis, p. 26, line 23 to p. 27, line 9).  He has over ten years of law enforcement experience, having served as the Chief of Police of the City of Maplesville, as a Narcotics K( officer, as a Chilton County Deputy Sheriff, and as a Maplesville police officer.  (Ex. "D", Depo. of Davis, p. 7, line 9, to p. 10, line 6).  Sheriff Davis defeated former Chilton County Sheriff Billy Wayne Fulmer.  (Ex. "D", Depo. of Davis, p. 27, line 23 to p. 28, line 9).  Both Plaintiffs actively campaigned for Billy Wayne Fulmer and against Sheriff Davis in the election.  (Ex. "A", Depo. of Fulmer, p. 81, line 11-23; depo of Autery, p. 150, line 14 to p. 151, line 14).

Shane Mayfield served as Chief Deputy for prior Sheriff Billy Wayne Fulmer.  (Ex. "B", Affidavit of Shane Mayfield, ¶ 2).  He was re-employed in that position by

Sheriff Davis. (Id). When Sheriff Davis took office, he and Chief Deputy Mayfield began to assess, review, and evaluate employees in the office. (Ex. "B", Affidavit of Shane Mayfield, ¶ 3). Chief Deputy Mayfield advised Sheriff Davis of strengths, weaknesses, and other relevant information based on his personal knowledge of having worked with the existing employees in the Sheriff's office. (Id).

Chief Deputy Mayfield had, however, very little control over Shane Fulmer since his father, Billy Wayne Fulmer, was the then Sheriff. (Id). He warned Sheriff Davis that he could expect difficulties in trying to manage the former Sheriff's relatives, such as Shane Fulmer, because he had heard that Billy Wayne Fulmer intended to seek re-election to his former position as Sheriff of Chilton County in the year 2010. (Id).

Both Shane Fulmer and Robbie Autery continued to complain about Sheriff Davis's decisions with regard to their employment. (Ex. "B", Affidavit of Shane Mayfield, ¶ 8 and 9; Ex. "C", Depo. of Autery p. 46, line 4 to p. 47, l. 17, p. 55, lines 1-23, p. 102, lines 4-6, p. 121, lines 1-18; Ex. "D", Depo. of Davis p. 241, line 11 to p. 244, line 21, p. 248, line 5, to p. 251, line 21, p. 254, lines 1-16). Based upon the repeated complaints by Shane Fulmer and Robbie Autery, Chief Deputy Mayfield reported their conduct to Sheriff Davis. (Ex. "B", Affidavit of Shane Mayfield, ¶ 9).

Sheriff Davis terminated their employment on September 10, 2007. (Complaint ¶ 10).

Following their termination, neither Robbie Autery nor Shane Fulmer were given a post-termination due process hearing, because there was not a merit system board in place. (Ex. "D", Depo. of Davis p. 111, lines 7-12; p. 154, line 20 to p. 155, line 6).

Sheriff Davis believed that it was appropriate for him to have the authority to fire a deputy. (Ex. "D", Depo. of Davis p. 130, line 23 to p. 132, line 12). He testified as follows:

"Q.    And to you that's a bad thing, right?
       Mr. Sheehan: Object to the form.
A.     No, I don't think it's a bad thing. I made a stance all along that
       I don't think someone just should come in and fire. But at the
       same time, I don't think that a merit board dictating to the Sheriff
       how to run his department is a good thing. Because like I said,
       the liability and the responsibility to the County and the people of
       the County is not going to fall back on these members of this
       board. It's going to fall back on the Sheriff.
Q.     Why do you say that?
A.     It's obvious. The deputies are an arm of the Sheriff's office and
       me. And when it comes to liability or responsibility or what the
       County requires us to do, then this board is not going to be the
       one held liable for it. It's going to be me. So why should I be
       trying to direct and send my department in a direction because
       somebody don't like it and they look at me and say I don't have
       to do it because I got a merit board."
(Id.).

State of Alabama House Bill 69 (hereinafter HB 69), Act No. 2002-90) purportedly created a civil service merit system for certain employees of the office of the Sheriff. (See Exhibit 1 to Plaintiff's Complaint). Specifically, the Act provided

for a board to govern dismissals, suspensions, lay-offs, and terminations. See Exhibit 1 to Plaintiff's Complaint). The board was to be comprised of one member appointed by the Chilton County Commission, one member appointed by the Chilton County Sheriff, and one member appointed jointly by the Chilton County Commission and Chilton County Sheriff. (See Exhibit 1 to Plaintiff's Complaint).

HB 69 was a "local law," pertaining only to Chilton County, and as such, triggered the protections of the notice and proof requirements of Article IV, § 106 of the Constitution of Alabama of 1901. HB 69 was first introduced into the Alabama House of Representatives on January 8, 2002. (Ex. "G", Affidavit of Pappas, ¶ 7). *See* Exhibit 1 to Plaintiff's Complaint. HB 69 was passed by the House on January 15, 2002 and subsequently by the Senate on February 19, 2002. (See Exhibit 1 to Plaintiff's Complaint). HB 69, was published in the <u>*Clanton Advertiser*</u>, a newspaper of general circulation in Chilton County, Alabama on June 2, 10, 17, and 24, 2002. (Ex. "G", Affidavit of Pappas, ¶ 3). A copy of the affidavit of Michael R. Kelly, publisher of the <u>*Clanton Advertiser*</u> at the time of the advertisements, is attached hereto as Exhibit H.

Plaintiffs object to and move the Court to strike the following portion of Defendant's alleged undisputed facts because the material is not admissible evidence and does not state undisputed facts:

After Sheriff Davis took office in January of 2007, Chief Deputy Mayfield received numerous reports about conduct that was creating dissention and mistrust among employees in the Sheriff's office.

His comments about Sheriff Davis were not constructive in nature, nor were they aimed at improving the Investigations Unit. (Ex "E", Affidavit of Poe, ¶ 7). Instead, his comments were a personal attack on Sheriff Davis and the way he operated the office of Sheriff of Chilton County. (Id).

Chief Deputy Mayfield had also received complaints from citizens that Robbie Autery was driving his patrol car back and forth to his home, which was located in the city of Alabaster, which is in the adjacent county.

In law enforcement, closeness and cooperation are vital and necessitate that a Sheriff have absolute authority over implementation of goals, policies, and procedures. (Id). In addition, it is important for officers to be able to rely upon one another and, when called upon, to back up their fellow officers. (Id). There was concern by Chief Deputy Mayfield and Captain Steve Tate that these employees might not be loyal and appropriately back up their fellow officers. (Ex. "F", Affidavit of Tate, ¶ 4; Ex. "B", Affidavit of Shane Mayfield, ¶ 9).

Based upon the conduct of both Robbie Autery and Shane Fulmer, Chief Deputy Mayfield recommended to Sheriff Davis that they both be terminated due to

their negative affect on the morale in the office as well as concern over the safety of other officers who supported Sheriff David.

The balance of Defendant's alleged undisputed facts are disputed by Plaintiffs.

## PLAINTIFFS' NARRATIVE SUMMARY OF MATERIAL FACTS

The Evidentiary Submission submitted herewith contains excerpts from the depositions in this case which constitute the material facts along with those adopted from Defendant.

## THE SUMMARY JUDGMENT STANDARD REQUIRES DENIAL

The Court must consider all the evidence in favor of the non-movant and against the movant in deciding a motion for summary judgment. The consideration of the evidence in favor of the non-movant in the summary judgment context means viewing the evidence in the light most favorable to the non-movant, resolving all conflicts in the evidence in favor of the non-movant, and granting the non-movant all reasonable inferences from the evidence, all for the purpose of deciding whether there is genuine issue of material fact. If there is a genuine issue of material fact, the motion must be denied. However, the non-movant has no burden to make any showing of any kind until the movant has <u>first</u> demonstrated from the materials on file that there is no genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 669 (11th Cir. 1990); *Hoffman v. Allied Corp.*, 912 F2d 1379, 1383 (11th Cir. 1990); and *Howard v. BP Oil Co., Inc.*, 32 F.3d 520, 524 (11th Cir. 1994).

It is obvious from following the disputes of fact set out above from the depositions and the affidavits of the Plaintiffs that many material facts are disputed. The Defendant did not implement the Local Act passed to establish a merit system for employees of the Sheriff's Office in Chilton County because he wanted for himself the absolute and unrestricted power to fire all Sheriff's Department employees. But, the Act is clear that appointing a representative of the Chilton County Sheriff to the merit system board established by the Act was not discretionary. There is a genuine issue of material facts as to whether Defendant demoted and terminated Plaintiffs for protected free speech, which is not discretionary. So, qualified immunity does not apply because the Defendant could not establish the threshold element that the appointment was discretionary.

The elements of § 1983 that establish that their constitutional rights have been violated and that the official violating them was on notice that his conduct violated those rights are all present in this case.

## **ARGUMENT**

## **INTRODUCTION**

This case is clearly a First Amendment-Fourteenth Amendment demotion and discharge case. The Plaintiffs campaigned for Defendant's opponent in the race for Sheriff which preceded the Defendant's election, the Plaintiffs spoke out about the way in which Defendant was administering the Sheriff's Office, they spoke out about

the failure of the Defendant to appoint a member of a merit system board for Chilton County employees as mandated by state statute to activate the merit system, and Plaintiffs reported to the Alabama Attorney General's office what they believed to be criminal activities of Defendant in financial dealings with public funds. These activities of Plaintiffs certainly did not endear them to the Defendant and are exactly the type of activities against which the ordinary public official would be tempted to retaliate. What better way to retaliate than for a public official to demote, humiliate, and terminate? It is undisputed that this is what the Defendant did, but his reasons for doing so are hotly disputed.

Defendant, however, takes the position that he did not violate Plaintiffs' constitutional rights and that he is entitled to summary judgment because he is qualifiedly immune from trial on Plaintiffs' charges.

As to the failure to appoint a member of the Chilton County merit system board established by the Act, Defendant says the Act is unconstitutional because (1) it was not introduced in the first session of the Alabama Legislature after it was advertised, and (2) the Alabama Legislature and the Alabama Governor cannot enact a law establishing regulations for employees of the executive branch of the Alabama government.

## THE CONSTITUTIONALITY OF THE ACT

Defendant's first argument is that the Act is unconstitutional because it authorizes the Chilton County Commission, a local legislative branch, "to exercise power in the realm of an executive office." (Def. Br. at 13). The complaint is that, "Allowing the Chilton County Commission to freely appoint one merit board member and agree on the appointment of another would thereby give unconstitutional power of appointment to the Chilton County Commission." (*Id.* at 13-14). The only authority cited for this proposition is *Santana v. Calderon*, 342 F.3d 18, 26 (1 st Cir. 2003) which holds that the President of the United States has the power to remove federal executive officers appointed by him with the advice and consent of the Senate.

It is not clear why the Defendant would cite this case which brings out the fact that the United States Senate, a legislative body, has the final say in appointing executive officers either because the Constitution says so or the legislation creating the office says so. Aside from the fact that it is silly to liken the authority of the Sheriff of Chilton County in the Alabama system to the authority of the President in the federal system, the case and the United States Constitution give the legislature a major role in selecting executive officers. Moreover, in both Alabama and the federal system, merit system boards for executive branch employees have been established. Defendant's point, whatever it is, requires no further discussion.

Defendant next argues that the Act is unconstitutional because it was not introduced in the first session of the legislature subsequent to being advertised so as to meet the requirements of Article IV, § 106 of the Alabama Constitution. Defendant argues that the advertisement of the Act stated that it would be introduced in the "first" legislative session after the advertisement had run in the newspaper for four weeks. It is undisputed that the Act was introduced in the first "regular session" of the legislature following the advertisement but was not introduced in the first "special" session following the advertisement. (Def. Br. at 17). It is also undisputed that a "special" session covers only the topics specified by the governor, of which the act was not one, and that it requires a two-thirds vote of each house to bring up any other topic. (*Id.*).

Plaintiffs have diligently searched for some authority holding a "special" session to be analogous to a "regular" session for the introduction of local acts and cannot find any such authority. Defendant does not cite any. However, it is just common sense that one cannot analogize a "special" session to a "general" because of the two-thirds rule applicable to "special" sessions. The summary judgment must fail on this ground.

## THE QUALIFIED IMMUNITY DEFENSE

Qualified immunity shields public officials performing <u>discretionary functions</u> from suit for civil rights violations as long as "their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court of the United States has recently reversed a decision out of the Eleventh Circuit as to the "level of specificity" required for this foreknowledge. In *Hope v. Pelzer*, 536 U.S. 730, 739-741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002), the court held that officers sued in a civil action for damages under 42 U.S.C. § 1983 were not entitled to qualified immunity if their actions violate clearly established statutory or constitutional rights of "which a reasonable person would have known." (Citing *Harlow v. Fitzgerald, supra*, at 818). The court held that for purposes of qualified immunity, officials can still be on notice that their conduct violates established law even in novel factual circumstances because notice does not require that the facts of previous cases be materially or fundamentally similar to the situation before the officers. Rather, the salient question is whether the state of the law at the time gives officials fair warning that their conduct is unconstitutional. *Hope* at 741. The court stressed that an official action was not protected by qualified immunity unless the very action in question had previously been held to be unlawful. A constitutional right is clearly established for purposes of qualified immunity if its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that constitutional right. (*Id*. at 739).

In determining whether an official is entitled to qualified immunity, the threshold inquiry a court must undertake is whether plaintiff's allegations, if true, establish a constitutional violation. The secondary inquiry is notice. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

In *Epps v. Watson*, 492 F.3d 1240 (11th Cir. 2007), a former employee brought a free association and procedural due process claim against the county tax commissioner. The court first held that a public official who asserts a defense of qualified immunity has the burden of establishing that he was engaged in discharging a discretionary function when he performed the acts of which the plaintiff complains. *Holloman Ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004). If the discretionary nature of the actions complained of are established, or not disputed, the court next looks to determine (1) whether the plaintiff has factually alleged the deprivation of a constitutional right, and (2) whether that right was clearly established at the time of the violation ("notice"). *Saucier, supra,* at 201. The plaintiff has the burden of proof as to both of these determinations. *Holloman, supra,* at 1264. However, the burden does not shift to the plaintiff until the government official has established that the act charged was performed within the official's discretionary authority. *Watson, supra,* at 1243.

Plaintiffs contend that Defendant did not have discretion as to whether to make appointments to the Chilton County merit system board for employees of the Sheriff's

Office, but was required to do so.  Nor did Defendant have the discretion to terminate Plaintiffs because of their free speech and political activities.  Both of these actions are the subject of disputed facts, but the Defendant did not have discretion.

In the *Epps* case, the plaintiff, an employee of the tax commissioner, alleged that she was terminated because she had allowed the tax commissioner's election opponent to place campaign signage on her private property.  The commissioner did not ask to place her signage on the property.  Epps was discharged on the day of the commissioner's reelection.  She was told by the commissioner that even though she was performing well at the time, she was dismissed because of a "cold environment." (*Id.* at 1244).  This is essentially the claim being made by Defendant with regard to the Plaintiffs supporting former Sheriff Fulmer in the election campaign in which Defendant defeated Fulmer.

In *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), the court declared "patronage dismissals" unconstitutional because the practice limited political belief and association protected by the First and Fourteenth Amendments. See also *Terry v. Cook*, 866 F.2d 373, 377 (11th Cir. 1999), holding that when public employment is conditioned on political allegiance and not upon the content of expressions of political belief, the political patronage analysis is appropriate in determining whether a constitutional right has been established.

In *Epps*, the court held that to establish a procedural due process constitutional deprivation claim, the plaintiff must show that he had a protected property interest in his employment. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 571, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In *Ross v. Clayton County, Georgia*, 173 F.3d 1305, 1307 (11th Cir. 1999), the court held that, "Generally, a public employee has a property interest in continued employment if state law or local ordinance <u>in any way</u> limits the power of the appointing body to dismiss an employee." (emphasis supplied). In *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), the court held that a public employee with a property interest in continued employment is entitled, prior to termination, to notice of the charges against him and a fair hearing following an explanation of the employer's evidence against him.

Defendant prevented job protection for Plaintiffs by failing to appoint the board members he was required to appoint. It is Plaintiffs' position that they had a clear constitutional right to have the board appointed to protect their jobs from arbitrary termination and provide them with due process protection for their jobs. Defendant, by his own admission did not want the employees in his office to have the due process job protection the board would have afforded them. The property interest in their jobs arose when the legislature passed the Act and the governor signed it.

Defendant cannot use his own unlawful acts to deny Plaintiffs a property interest in the jobs and due process protection for them.

In *Brett v. Jefferson County, Georgia*, 123 F.3d 1429, 1432-1433 (11th Cir. 1997), the court recognized that a sheriff could not refuse to reappoint deputy sheriffs for unconstitutional reasons. The court found there were two related lines of cases, one involving employee expression and one involving "raw political patronage." In the employee expression cases, the balancing test established in *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), requires the court to balance the interest of the employee as a citizen in commenting upon matters of public concern and the interest of the state as en employer in promoting the efficiency of the public services it performs through its employees.

In political patronage cases, the standard to be applied is whether conditioning the retention of public employment on the employee's support of the "in-party" must further some vital government end by a means that is least restrictive of freedom of belief and association in achieving that end and the benefit gained must outweigh the loss of constitutionally protected rights. A condition of employment on political patronage may be constitutionally accepted if the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved. *Branti v. Finkel*, 445 U.S. 507, 518, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980).

It is interesting to note that the former deputy sheriffs in *Brett* did not apply for reappointment but that the court held that the failure to reapply was irrelevant to a First Amendment claim if the application would have been futile. (1433 at n. 9). The court further held that the factual issue of futility should have been submitted to the jury for decision and not decided on summary judgment.

Finally, in *Perry v. Sindermann*, 408 U.S. 593, 597, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), the court held that even though a person has no "right" to a valuable government benefit, and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. The government "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests – especially, his interest in free speech." The court further noted that this principle applies to denials of public employment, not just termination. The court in *Perry* ruled that the lack of a contractual "right" to re-employment during the next academic year was immaterial to a college professor's free speech claim. (*Id.* at 597-598).

In *Leonard v. Robinson*, 2007 WL 283832 (6th Cir.) [CORRECT CITATION], the court held that a police officer who arrested an individual for speech at a public meeting was not entitled to qualified immunity. Leonard attended a meeting of the Township Board of Montrose, Michigan at a time when the Leonards were involved in a lawsuit against the Township. Leonard alleged that the lawsuit created enmity

between his family and the Montrose Chief of Police which led the Chief of Police to order police officer Robinson to attend the meeting.  During the portion of the meeting called "citizen time," Leonard addressed the board, saying, among other things, "we are sick and tired of getting screwed" and "that's why you are in a God damn lawsuit."  The Township supervisor reprimanded Leonard for his language and Officer Robinson placed him under arrest.  The citation was subsequently dismissed. Three Michigan statutes provided, in effect, that a person is a disorderly person if he is engaged in indecent or obscene conduct in a public place.  Leonard filed a § 1983 action against Officer Robinson.  The District Court granted Robinson's qualified immunity motion for summary judgment on the ground that the three statutes had given him probable cause to arrest Leonard.

The 6th Circuit reversed (*Id.* at *11-12) rejecting the claim that Robinson was required to enforce the laws unless they were declared unconstitutional emphasizing the "prominent position that free political speech has in the jurisprudence and our society."  The court held that a reasonable officer would have known that the three statutes were unconstitutionally vague, sharply limited with respect to speech, or "inapposite."  (*Id.* at *13).  The court held that at trial a reasonable fact finder could conclude that Leonard was arrested in retaliation for exercising his free speech right concerning the ongoing lawsuit and his feud with the Chief of Police.  (*Id.* at *12). The court held that the disputed facts concerning whether Leonard disturbed the

meeting and whether Officer Robinson lied about his reason for attending the meeting were issues for the fact finder.  It is clear from the opinion that unique problems arise in the determination of qualified immunity where the context is the First Amendment.

In *Reno v. ACLU*, 521 U.S. 844, 872 (1997), the court held that he chilling effects of qualified immunity where the effect is to protect the official from viewpoint discrimination, militate against application of qualified immunity.  The Supreme Court's concept of "notice" to the official in the First Amendment qualified immunity context is largely notice in name only, as it is premised on the legal fiction that all officers have perfect knowledge of legal precedent concerning all statutes and constitutional provisions that they enforce.  *Leonard* at *14.

## CONCLUSION

These authorities establish that Defendant is not entitled to qualified immunity as a matter of law because he has not shown he was acting in a discretionary matter in demoting and terminating the Plaintiffs or in failing to appoint the Chilton County Sheriff's employees merit system board members the Act required him to appoint.

These authorities further establish a genuine issue of material fact that Plaintiffs' constitutional rights have been violated by Defendant and that Defendant had notice of such rights.

Therefore, Defendant's motion for summary judgment is due to be denied as to both Plaintiffs.

Respectfully submitted,

 s/*William Eugene Rutledge*
WILLIAM EUGENE RUTLEDGE
ASB-7707-r67w
Attorney for Plaintiffs

OF COUNSEL:

RUTLEDGE & YAGHMAI
3800 Colonnade Parkway
Suite 490
Birmingham, AL 35243
T:  (205) 969-2868
F: (205) 969-2862
williamerutledge@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2008, I filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

C. Winston Sheehan, Jr., Esq.
Allison Alford Ingram, Esq.
John W. Marsh, Esq.
Ball, Ball, Matthews & Novak, P.A.
P. O. Box 2148
Montgomery, AL 36102-2148

 /s/*William Eugene Rutledge*
OF COUNSEL