IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ROBBIE AUTERY, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CASE NO. 2:08-cv-41-MEF |
| ) | |
| KEVIN DAVIS, ) | (WO - Recommended for Publication) |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiffs seek monetary damages as well as injunctive relief arising out of the termination of their employment as deputies in the Sheriff's Office for Chilton County. Plaintiffs are suing their former employer, Sheriff Ken Davis, pursuant to 42 U.S.C. § 1983 alleging that his termination of their employment violated their due process and freedom of speech rights. Currently before this Court is Defendant Kevin Davis's Motion for Summary Judgment (Doc. # 18), filed May 30, 2008. After reviewing the submissions of the parties in connection with the motions, this Court finds that Defendant's motion for summary judgment is due to be granted.

### **I. JURISDICTION AND VENUE**

The Court exercises subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 (federal question). The parties contest neither personal jurisdiction nor venue, and the Court finds an adequate factual basis for each.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments,* 94 F.3d 1489, 1496 (11th Cir. 1996) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transp.,* 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami,* 52 F.3d 918, 921 (11th Cir. 1995) (internal quotation marks and citations omitted)).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of its case on

which it bears the ultimate burden of proof. *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the nonmovant and must draw all justifiable inferences from the evidence in the nonmoving party's favor. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *McCormick v. City of Fort Lauderdale,* 333 F.3d 1234, 1243 (11th Cir. 2003) (the evidence and all reasonable inferences from the evidence must be viewed in the light most favorable to the nonmovant). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

### III.  FACTS AND PROCEDURAL HISTORY

The Court has carefully considered all deposition excerpts and documents submitted in support of and in opposition to the motions. The submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following relevant facts:

Plaintiff Shane Fulmer was hired to work as a Chilton County Deputy Sheriff on January 19, 1999 by former Chilton County Sheriff Billy Wayne Fulmer. Shane Fulmer is the son of Billy Wayne Fulmer. Plaintiff Robbie Autery ("Autery") was hired by former Sheriff Fulmer as a part-time Chilton County Deputy Sheriff on October 3, 2005, and he became a full-time Deputy on June 19, 2006. In addition, Billy Wayne Fulmer was at one point married to Autrey's aunt.

Defendant Kevin Davis ("Sheriff Davis") was elected Sheriff of Chilton County in November 2006, defeating Billy Wayne Fulmer. Plaintiffs actively campaigned for Billy Wayne Fulmer and against Sheriff Davis.

Shane Mayfield ("Mayfield") had served as Chief Deputy for the former Sheriff Billy Wayne Fulmer. Sheriff Davis kept Mayfield as Chief Deputy after he was elected. Sheriff Davis had Mayfield assess, review, and evaluate the employees in that office. Mayfield advised Sheriff Davis of the strengths and weaknesses of each employee based on his personal knowledge and experience of working with them. When Billy Wayne Fulmer was the sheriff, Mayfield felt he had very little control over Shane Fulmer due to the fact that the sheriff was his father. Mayfield warned Sheriff Davis that he might expect problems managing the former sheriff's relatives.

Shane Fulmer and Autery repeatedly complained to other employees, including Mayfield, about Sheriff Davis's policies and decisions with regard to their employment. Mayfield reported this conduct to Sheriff Davis. On several occasions, Sheriff Davis told

Shane Fulmer and Autery that he would not tolerate such insubordination. Prior to their termination, Shane Fulmer and Autery learned that Sheriff Davis had been entering into business transactions on behalf of the Sheriff's Office with businesses owned by his wife. Autery made a complaint to the Attorney General's Office for the State of Alabama regarding these transactions. Sheriff Davis terminated the employment of Shane Fulmer and Autery on September 10, 2007. During the meeting at which their employment was terminated, Sheriff Davis asked them questions about their communications with the Attorney General's Office, which they refused to answer.

Neither Shane Fulmer nor Autery were given post-termination hearings. State of Alabama House Bill 69 ("HB 69"), Act No. 2002-90, created a civil service merit system for employees of the office of the sheriff, which included deputies. This Act created a three-person board to approve dismissals, suspensions, lay-offs, and terminations of these employees. The board was to be comprised of one member appointed by the Chilton County Commission, one member appointed by the Chilton County Sheriff, and one member appointed jointly by the Chilton County Commission and Chilton County Sheriff. Sheriff Davis did not submit the terminations of Shane Fulmer and Autery to the merit board because no members of the board had been appointed.

## IV. DISCUSSION

**A.    Due Process**

Plaintiffs first § 1983 claim is that Sheriff Davis's failure to work with the Chilton

County Commission to appoint the merit board, and subsequent denial of a post-termination hearing, constituted a denial of Plaintiffs constitutional right to due process. The law is clearly established that government employees have no substantive due process rights regarding their employment. *See, e.g.*, *Bussinger v. City of New Smyrna Beach*, 50 F.3d 922, 925 (11th Cir. 1995) ("[A]n employee with a protected interest in his job may not maintain a substantive due process claim arising out of his termination."). Therefore, this Court is left to determine only whether their termination violated Plaintiffs' procedural due process rights.

Plaintiffs allege that Sheriff Davis deprived them of due process by failing to adhere to established state procedures, namely appointing a merit board and submitting their terminations for the board's approval. However, a state official's conduct, in violation of established state procedure, does not violate the Fourteenth Amendment's procedural due process requirement unless the state fails to make a meaningful postdeprivation remedy available. *See Parratt v. Taylor*, 451 U.S. 527, 543-44 (1981) (holding that unauthorized negligent actions of state officials depriving prisoner of property did not violate procedural due process because state made available to prisoners a postdeprivation grievance procedure to recover on tort claims against the state); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (extending *Parratt* to hold that unauthorized, intentional deprivations of property by state officials does not violate procedural due process so long as state provides adequate postdeprivation remedies).

In *Lumpkin v. City of Lafayette*, 24 F. Supp. 2d 1259 (M.D. Ala. 1998) (Albritton, J.),

the plaintiff was employed by the city of Lafayette, Alabama as Public Safety Director. A city ordinance provided that the Public Safety Director was a merit system employee entitled to certain pre- and post-termination procedures. *See id.* at 1261. When the plaintiff was terminated without a hearing, he sued the city, mayor, and city counsel members under § 1983 for deprivation of due process. Judge Albritton noted that the plaintiff was alleging that the deprivation was caused by *unauthorized* actions of state officials, because the alleged deprivation was the result of the city's failure to follow its established merit system procedure for notice and a hearing. *See id.* at 1265. Accordingly, Judge Albritton held that the rule established by *Parratt* and *Hudson* applied, and the plaintiff could only succeed if he could show the absence of any meaningful post-deprivation remedy. Judge Albritton then looked to the law of Alabama and found that "Alabama courts review employment termination proceedings both to determine whether they are supported by substantial evidence and to see that the proceedings comport with procedural due process." *Id.* (citing *Bell v. City of Demopolis*, 86 F.3d 191, 192 (11th Cir. 1996); *Ex Parte Tuskegee*, 447 So.2d 713 (Ala. 1984); *Guinn v. Eufaula*, 437 So.2d 516 (Ala. 1983)) (internal quotation marks omitted). Judge Albritton therefore held that Alabama's judicial system provided a meaningful postdeprivation remedy, and that plaintiff could not establish a constitutional violation. *See id.* at 1266.

Like the plaintiff in *Lumpkin*, Plaintiffs Shane Fulmer and Autery have alleged inadequate procedural due process as a result of unauthorized conduct on the part of state

officials. Specifically, Plaintiffs allege that Sheriff Davis's failure to follow the requirements of HB 69 deprived them of due process. However, the law of this circuit is that Alabama courts provide a meaningful postdeprivation remedy, which is all that due process requires. *See Bell*, 86 F.3d at 192; *Lumpkin*, 24 F. Supp. 2d at 1266. Consequently, Plaintiffs have failed to establish a constitutional violation, and summary judgment in favor of Defendant is due to be granted on the due process claims.[1]

**B.     First Amendment**

Plaintiffs also allege pursuant to § 1983 that their termination violated their freedom of speech rights. Although not clearly articulated in their brief, Plaintiffs appear to be arguing two alternative ways in which their freedom of speech was violated. The first alternative is that they were terminated based on "raw political patronage" for supporting Billy Wayne Fulmer's campaign for sheriff. *See, e.g.*, *Terry v. Cook*, 866 F.2d 373, 375 (11th Cir. 1989). The second alternative is that they were terminated for expression on matters of public concern. *See, e.g.*, *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968).

With respect to Plaintiffs' raw political patronage claim, the Eleventh Circuit discussed a sheriff's right to terminate his deputies for political reasons in *Terry v. Cook*. In that case, the Circuit noted that

> Under Alabama law, a deputy sheriff is the general agent of and empowered to enter into business transactions for the sheriff. Any transaction within the

---

[1] Because this Court is granting Defendant's motion with respect to Plaintiffs' due process claims, this Court need not address Defendant's arguments related to the validity of HB 69.

> scope of the sheriff's duties may be acted upon by his deputy. The deputy sheriff is the alter ego of the sheriff, and the sheriff is civilly liable for actions committed by a deputy done in the performance of his duty.

*Terry*, 866 F.2d at 377 (internal citations omitted). Moreover, "[a]t least one court has recognized that it was never contemplated that the sheriffs of the state must perform the powers and duties vested in them through deputies or assistants selected by someone else." *Id.* For these reasons, the Circuit held that "[w]e can find no less restrictive means for meeting the needs of public service in the case of the sheriff's deputy than to acknowledge a sheriff's absolute authority of appointment and to decline to reinstate those who did not support him." *Id.* Consequently, even if Sheriff Davis did terminate Plaintiffs' employment based on their support for Billy Wayne Fulmer's campaign, he had "absolute authority" under the rule announced in *Terry* to do so. Accordingly, Plaintiffs' raw political patronage claim is without merit.

Lastly, in order to state a valid employee expression claim, an employee must satisfy a four-part test. Where a public employee alleges wrongful termination because of the exercise of free speech, the employee must show by a preponderance of the evidence that: (1) the employee's speech is on a matter of public concern; (2) the employee's first amendment interest in engaging in the speech outweighs the employer's interest in prohibiting the speech in order to promote the efficiency of the public services it performs through its employees; and (3) the employee's speech played a "substantial part" in the employer's decision to demote or discharge the employee. If the employee succeeds in

showing the preceding factors, the employer must prove by a preponderance of the evidence that (4) it would have reached the same decision even in the absence of the protected conduct. *See Stanley v. City of Dalton*, 219 F.3d 1280, 1288 (11th Cir. 2000).

Plaintiffs do not clearly state exactly which speech forms the basis of their first amendment claim. However, it appears that Plaintiffs are arguing they were terminated for reporting alleged misconduct on the part of Sheriff Davis to the Alabama Attorney General's Office. Autrey testified that, after Davis became Sheriff, Davis made certain business transactions on behalf of the Sheriff's Office with businesses owned by his wife. Autrey felt this was improper and communicated this to the Attorney General. Autrey further testified that, when he was terminated, Sheriff Davis indicated that he was aware that Autrey had made this report to the Attorney General. According to Autrey, Sheriff Davis told Autrey that he had sought prior approval to conduct transactions with his wife's businesses. Autrey also testified that Sheriff Davis asked who Autrey spoke with at the Attorney General's office, and how he learned about the transactions. When Autrey refused to answer these questions, Sheriff Davis fired him. Shane Fulmer also testified that Sheriff Davis terminated him after he refused to answer questions related to conversations he had with various individuals regarding these alleged ethics violations.

Reporting police misconduct is speech on a matter of public concern as a matter of law. *See Fikes v. City of Daphne*, 79 F.3d 1079, 1084 (11th Cir. 1996) ("A core concern of the First Amendment is the protection of the 'whistle-blower' attempting to expose

10

government corruption."); *Stanley*, 219 F.3d at 1289 (police officer accusing fellow officer of stealing money from evidence room constituted speech on a matter of public concern). Therefore, the analysis turns to the *Pickering* balancing test which weights the rights of the employee against the rights of the employer.

When weighing the employee's first amendment interests against the interest of the state, as an employer, in promoting the efficiency of its public services, this Court is to consider the following factors: (1) whether the speech at issue impedes the government's ability to perform its duties efficiently, (2) the manner, time, and place of the speech, and (3) the context within which the speech was made. *See Stanley*, 219 F.3d at 1289.

In *Stanley*, the Eleventh Circuit held that this balance weighed in favor of an officer's first amendment interests where the officer expressed a theory that a superior officer had stolen money from the evidence room, during an interview by an agency investigating the theft. *See Stanley*, 219 F.3d at 1289-91. During its analysis, the Circuit noted several key factors that weighed in favor of the officer's first amendment rights: (1) there was no evidence the officer's comments actually disrupted the police department; and (2) the accusations were not voiced to any coworkers outside the interview, or to the public. *See id.* at 1290-91. However, the Circuit noted that, weighing against the officer's first amendment interests, was the fact that the officer was expressing a theory with little to no evidence to support his claim, because such accusations "could be considered disruptive and potentially undermining to the mutual respect and confidence needed for fellow officers in a police department." *See id.* at 1290.

11

In the case of *Bryson v. City of Waycross*, 888 F.2d 1562 (11th Cir. 1989), the Circuit found that the *Pickering* balance weighed against the police officer's right of expression. In that case, the officer filed a complaint with the city manager that the Police Chief had stolen whiskey from the police department's evidence room. The city investigated and found the allegations to be unfounded, and the officer was demoted. The Circuit found that the officer's conduct "substantially interfered with police department operations" because he made "bitter complaints to all who would listen in the police department" and was conducting an "active investigation" into the Police Chief, all of which severely undermined the morale of the police department. In addition, the officer's interest in speech was minimized because the context of the speech was such that the officer was dissatisfied with the fact that he had been passed over for a favorable job assignment. *Bryson*, 888 F.2d at 1567.

This Court finds that the *Pickering* balance weighs in favor of Sheriff Davis, because the facts of this case more analogous to *Bryson* than to *Stanley*. The context of Plaintiffs' complaints to the Attorney General, like *Bryson*, was that Plaintiffs' were extremely dissatisfied with Sheriff Davis's personnel decisions affecting them. Furthermore, Plaintiffs discussed the allegations with other officers. Moreover, Plaintiffs "repeatedly" and "constantly" complained to other officers about their disagreements with Sheriff Davis, which, according to several of the officers in the office, undermined the morale of the Sheriff's Office and was a "constant disruption." *See Bryson*, 888 F.2d at 1567. Accordingly, Plaintiffs have failed to meet their burden to show that their termination

violated their constitutional right to freedom of speech, and Defendant is entitled to summary judgment on this claim as well.

In addition, even if Plaintiffs were able to show a constitutional violation on their employee expression claim, Defendants would still be entitled to summary judgment on the basis of qualified immunity. In constitutional tort cases where evidence of wrongful intent is an element of liability, a state official is entitled to qualified immunity if the record indisputably establishes that the official was in fact motivated, *at least in part*, by lawful considerations. *See Stanley*, 219 F.3d at 1296; *Foy v. Holston*, 94 F.3d 1528, 1535 (11th Cir. 1996) ("Unless it, as a legal matter, is plain under the specific facts and circumstances of the case that the defendant's conduct—despite his having adequate lawful reasons to support the act—was the result of his unlawful motive."); *Johnson v. City of Fort Lauderdale*, 126 F.3d 1372, 1379 (11th Cir. 1997) ("The holding in *Foy* rested primarily on the existence of an indisputable and adequate lawful motive on the part of the social service employees such that reasonable officials would disagree as to the legality of their conduct.").

The record in this case is indisputable that (1) Sheriff Davis had adequate and lawful reasons to support terminating Plaintiffs' employment, and (2) that Sheriff Davis was motivated, at least in part, by these lawful considerations. *Stanley*, 219 F.3d at 1296. The testimony of several officers working in the Sheriff's Office establishes that Plaintiffs' constant and repeated complaints were undermining morale in the Sheriff's Office. Moreover, several officers noted that Plaintiffs' were not performing their job duties adequately. Consequently, Sheriff Davis had lawful reasons to terminate Plaintiffs' employment.

In addition, the record establishes that Sheriff Davis was motivated by these lawful considerations. In two separate meetings with Autrey prior to his termination, Sheriff Davis said that he was aware of Autrey's complaining, and that "he wasn't going to tolerate it no more," and if it continued he would "make an example out of somebody." Also, when Sheriff Davis fired Autrey, he cited Autrey's complaining as a basis for the termination. Moreover, in a meeting with Shane Fulmer prior to his termination, Sheriff Davis told Fulmer that he was reassigning him because Fulmer was constantly complaining about him and bringing down the morale of the Sheriff's Office. Under these circumstances, Sheriff Davis's decision to terminate Autrey and Shane Fulmer was "objectively reasonable" for the purpose of qualified immunity. *Stanley*, 219 F.3d at 1297. Accordingly, the Court finds that, in the alternative, Defendant is entitled to summary judgment on Plaintiffs' first amendment claim due to qualified immunity.

## V. CONCLUSION

For the reasons set forth above, it is hereby ORDERED that

(1)    Defendant's Motion for Summary Judgment (Doc. # 18) is GRANTED.

(2)    All claims and this case are DISMISSED WITH PREJUDICE.

(3)    The pretrial and the trial scheduled in this matter are CANCELLED.

(4)    This Court will enter a separate final judgment taxing costs.

DONE this the 13th day of August, 2008.

                                         /s/ Mark E. Fuller
                                  CHIEF UNITED STATES DISTRICT JUDGE

A copy of this checklist is available at the website for the USCA, 11th Circuit at www.ca11.uscourts.gov
Effective on April 9, 2006, the new fee to file an appeal will increase from $255.00 to $455.00.

## CIVIL APPEALS JURISDICTION CHECKLIST

**1.** **Appealable Orders:** Courts of Appeals have jurisdiction conferred and strictly limited by statute:

(a) **Appeals from final orders pursuant to 28 U.S.C. § 1291:** Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C.§ 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Pitney Bowes, Inc. v. Mestre, 701 F.2d 1 365, 1 368 ( 11th Ci r. 1 983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. § 636(c).

(b) **In cases involving multiple parties or multiple claims,** a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b). Williams v. Bishop, 732 F.2d 885, 885- 86 (11th Cir. 1984). A judg ment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. Budinich v. Becton Dickinson & Co., 486 U.S.196, 201, 108 S.Ct. 1717, 1721-22, 100 L .Ed.2d 178 (1988); LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 837 (11th Cir. 1998).

(c) **Appeals pursuant to 28 U.S.C. § 1292(a):** Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions . . ." and from "[i]nterlocutory decrees . . . determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

(d) **Appeals pursuant to 28 U.S.C. § 1292(b) and Fed.R.App.P. 5**: The certification specified in 28 U.S.C. § 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

(e) **Appeals pursuant to judicially created exceptions to the finality rule:** Limited exceptions are discussed in cases including, but not limited to: Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc., 890 F.2d 371, 376 (11th Cir. 1989); Gillespie v. United States Steel Corp., 379 U.S. 148, 157, 85 S.Ct. 308, 312, 13 L.Ed.2d 199 (1964).

Rev.: 4/04

2. **Time for Filing**: The timely filing of a notice of appeal is mandatory and jurisdictional. Rinaldo v. Corbett, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P. 4(a) and (c) set the following time limits:

   (a) **Fed.R.App.P. 4(a)(1):** A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD – no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

   (b) **Fed.R.App.P. 4(a)(3):** "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

   (c) **Fed.R.App.P. 4(a)(4):** If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

   (d) **Fed.R.App.P. 4(a)(5) and 4(a)(6):** Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

   (e) **Fed.R.App.P. 4(c):** If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3. **Format of the notice of appeal:** Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. See also Fed.R.App.P. 3(c). A pro se notice of appeal must be signed by the appellant.

4. **Effect of a notice of appeal:** A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).